NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230682-U

NO. 4-23-0682

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 6, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Warren County |
| TYREE A. McCUTCHEON, | ) | No. 22CF40 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Nigel D. Graham, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE CAVANAGH delivered the judgment of the court.
Justices Harris and Lannerd concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The appellate court affirmed, finding the trial court did not abuse its discretion
when sentencing defendant to 12 years' imprisonment.

¶ 2       In March 2023, defendant, Tyree A. McCutcheon, was sentenced to 12 years'
imprisonment for aggravated kidnaping (720 ILCS 5/10-2(a)(2) (West 2022)). On appeal,
defendant argues the trial court abused its discretion when imposing his 12-year sentence
because the court failed to consider pertinent mitigating evidence. We affirm.

¶ 3                                I. BACKGROUND

¶ 4       In March 2022, defendant was charged with the following offenses: aggravated
kidnaping when he confined R.D.M. (born December 6, 2021), a child under the age of 13 years
old, without parental consent (*id.*) (count I); aggravated domestic battery (*id.* § 12-3.3(a-5)) for
strangling Makayla Greenlief (count II); aggravated battery (*id.* § 12-3.05(d)(2)) for striking

Greenlief in the face at a time when he knew she was pregnant (count III); driving while his license was suspended (625 ILCS 5/6-303) (West 2022)) (count IV); driving under the influence (*id.* § 11-501(a)(5)) (count V); and aggravated driving under the influence at a time when his license was suspended (*id.* § 11-501(d)(1)(H)) (count VI).

¶ 5        In January 2023, defendant entered into a partially negotiated plea agreement wherein he pleaded guilty to aggravated kidnaping in exchange for the State's dismissal of the remaining charges. The State provided a factual basis that, on March 7, 2022, defendant and Greenlief were arguing while Greenlief was babysitting R.D.M. Before Greenlief could get R.D.M. out of the vehicle, defendant drove off. Multiple individuals tried to convince defendant to return the child, but he said he was leaving the state. Defendant was later apprehended with the child still in the vehicle. The trial court accepted defendant's plea as knowing and voluntary.

¶ 6        In March 2023, the matter proceeded to a sentencing hearing. The parties discussed the presentence investigation report (PSI), to which no additions or corrections were offered. The PSI showed defendant was adjudicated a delinquent for knowingly damaging property in 2009. He had a felony conviction for theft in 2011. He was also convicted of aggravated battery in 2011 and received a three-year prison sentence. In 2013, he received a three-year sentence for theft and a two-year concurrent term for resisting or obstructing a peace officer. In 2015, he was convicted of felony battery. In 2017, he received a four-year sentence for delivering methamphetamine. In 2020, he was convicted of felony battery. Defendant has two children with Greenlief, who has custody of both. Defendant also has a third child, who is in the custody of that child's mother. Defendant visited his children with Greenlief "almost every weekend" prior to his arrest. Defendant visited with his other child "every third weekend." Defendant was not court-ordered to pay child support for any of his children.

¶ 7        Amanda Grace from Warren County Court Services testified she monitored defendant's pretrial supervision. Initially, defendant cooperated with pretrial services, until he failed to appear for a court hearing and a warrant for his arrest was issued. Defendant had cut off his ankle monitor and went missing for approximately 10 days. Defendant tested positive for cannabis. A violation report prepared by Grace was admitted into evidence without objection, showing defendant had initially failed to report to pretrial services upon his initial release from custody.

¶ 8        Sergeant Lucas Johnson of the Monmouth Police Department testified he had interacted with defendant in August 2017. Johnson responded to a call involving a dispute between defendant and Lance McCutcheon, who wanted defendant removed from the home. Officers requested defendant come outside the home to give his side of the story. As defendant walked out of the home, he punched Lance McCutcheon in the presence of Johnson. Defendant was taken into custody.

¶ 9        Johnson recalled an incident from September 2013 wherein another officer had attempted to arrest defendant on outstanding warrants. Defendant had injured the officer, causing a "scratch with blood on [the officer's] right cheek and a small cut/scratch on [the officer's] right palm." Photographs of the officer's injuries were admitted into evidence without objection.

¶ 10        Monmouth police officer Austin Cox testified he responded to a domestic battery and kidnaping call in March 2022. He met with Greenlief, who was pregnant at the time, and she told him that she and defendant were in a physical altercation while driving home. Defendant struck her in the face and choked her. When the vehicle stopped, Greenlief was able to remove one child from the vehicle but was unable to get the child she was babysitting, R.D.M., from the vehicle before defendant drove off. Cox observed Greenlief was shaking and had a bleeding

laceration to her lip. Photographs of Greenlief's injuries to her face and neck were admitted into evidence without objection. Photographs showing five grams of cannabis recovered from the center console of the vehicle following defendant's arrest were also admitted into evidence without objection.

¶ 11　　　　Cox recalled being present when Greenlief's grandmother had a phone conversation with defendant attempting to get him to return R.D.M. Cox overheard defendant refuse to return the child and state he was leaving the state and that "he could sell the child for approximately $20,000 on the black market." Photographs of defendant's text messages during the incident were admitted into evidence without objection. The messages corroborated Cox's testimony, including that defendant stated he had "left town" and that "babies [were] worth 20,000 on the black market."

¶ 12　　　　Following defendant's arrest, Cox spoke with him. Defendant was agitated and believed the way he was arrested was unnecessary. Cox reiterated to defendant he was being accused of taking "somebody else's child and was not bringing him back." Defendant replied, "I f*** up." Cox observed defendant to be intoxicated.

¶ 13　　　　On cross-examination, Cox stated defendant and the child were located "[m]aybe a minute or two drive" from where the child was taken. The child was properly secured in the car seat and asleep.

¶ 14　　　　Michelle Wilson, the mother of R.D.M., testified she was working when she was informed R.D.M. had been kidnaped. Wilson stated she would not have permitted defendant to take her child because she did not know him personally. She stated the car seat smelled like marijuana. Voluntary police statements written by Wilson and R.D.M.'s father were admitted

- 4 -

into evidence without objection. On cross-examination, Wilson stated R.D.M. was three months old at the time of the incident and, when recovered, had no observable injuries.

¶ 15 Defendant called Greenlief to testify. Greenlief stated she had two children with defendant, and they had been in a dating relationship for seven years. She described having a "really good relationship" with defendant. She stated defendant has a good relationship with their two children and supports them financially. Photographs showing defendant with his children were admitted into evidence without objection. Greenlief stated she spoke with Wilson following the incident and relayed that Wilson did not believe defendant deserved to go to prison "for a long time" as a punishment. On cross-examination, Greenlief admitted defendant had struck her and choked her. She denied he had ever struck her before. Photographs depicting injuries to Greenlief from an incident in 2020 involving defendant were admitted into evidence without objection. Greenlief did not recall telling an Illinois Department of Children and Family Services investigator that their child had said "daddy gave mommy lots of blood" regarding the March 2022 incident.

¶ 16 Defendant testified he had a good relationship with his children. He described being "well over intoxicated" on the date of the incident. Defendant was aware his daughter and R.D.M. were in the back seat of the vehicle. When asked why he got in the driver's seat and drove the vehicle away, defendant stated:

> "Honestly, I don't know what I was thinking to be honest. Like, I was in a toxic mind state and I just wanted to remove myself, like—Just like [Greenlief] said, I'm not really a domestic violence type of person. I don't, like, put my hands on her, and when I did I seen her face and seen my kid there and she was crying. I felt real bad and I just jumped in the driver's seat and pulled off."

¶ 17         Defendant stated he "drove around" in a two or three block radius after leaving with R.D.M. in the back seat. He recalled coming back to the house but "panicked and pulled off" when he saw the police were there. He stated he did not exceed the speed limit or disobey traffic signs when he left, noting, "Even though I was drunk, I knew there was a child in the car. I still wasn't driving reckless, I was just angry." He admitted to having a problem with alcohol.

¶ 18         Regarding his text messages stating he was taking R.D.M. out of state, defendant responded he was "just upset" because he had a puppy that Greenlief and her grandmother had given away. He said he wrote those messages to make them upset and because he was intoxicated. He stated, "I wasn't going to leave town. I wasn't going to sell the kid. I was just upset."

¶ 19         The State argued the factors in aggravation were (1) defendant's conduct caused or threatened serious harm to Greenlief, their daughter, their unborn daughter, R.D.M, and the public at large, (2) defendant's extensive juvenile and criminal history, and (3) a sentence was necessary to deter others. The State recommended 18 years' imprisonment. Defendant argued in mitigation that (1) he was remorseful, (2) his credibility, demeanor, mentality, and stimuli had motivated his conduct, (3) the offense was out of character for him, (4) he has children, and (5) he had not intended to act on the threats he made in the text messages. Defendant requested the minimum of six years' imprisonment.

¶ 20         Defendant gave a statement in allocution:

          "I'm here pleading because I know I was wrong in my actions. I was
          highly intoxicated in a black-out state due to alcohol, and I wasn't contemplating
          the possible severity of my actions. I was in a toxic relationship and did things
          outside of my character. It was never my intention to kidnap or make anybody

believe I was trying to kidnap [R.D.M.] I honestly drove around a few blocks and I planned to pull up to the house. As I was pulling up to the house, I seen the cops and that's when, you know, I panicked and kept driving. Everyday for the last year I've regretted this decision. Ultimately, I know there's nothing I can say to justify my actions. I can only take responsibility for my poor choices and hope for the forgiveness and a second chance to prove I can be a better member of society. I plan to finish my school while I'm gone and come home with my associate's in business management.

I'm the father to my three young daughters who need me out here to support them and help take care of them and maintain a sober lifestyle to be the male role model that they need me to be. I also plan to complete a rehabilitation program when I come home. Prison is not a way to rehabilitate somebody. I know that I need help and I've been drunk or high on drugs pretty much every time I've been arrested, and I'm asking for the six-year minimum in this sentencing. I don't feel it's helping anyone by sentencing me to a long period of time.

And I'd just like to say, I honestly was here the day I had court. I didn't intend to go on the run. My ride was taking too long and I was late, and I was on the phone outside the courthouse with my attorney, but they said [the State] had already took the deal off the table, so that's the only reason that I wasn't here for court."

¶ 21    The trial court stated it considered (1) the factual basis for defendant's plea agreement, (2) the evidence presented at the sentencing hearing, (3) the PSI, (4) the history, character, and attitude of defendant, (5) arguments from the parties, (6) defendant's statement in

allocution, (7) the statutory factors in aggravation and mitigation, and (8) the circumstances of the offense. The court found in aggravation defendant's conduct caused or threatened serious harm. When considering this factor, the court noted:

> "I give some credit towards the defendant in that this does appear by all accounts to have been an impulsive act. I didn't hear any evidence or statements that suggested that this was something premeditated; however, the sequence of events I do still find disturbing. The defendant gets into a domestic fight, he hits Miss Greenlief, tries to choke her in front of their child, and then drove off drunk knowing there was someone else's infant in the car. Plainly, this is unhinged, out of control, and incredibly dangerous behavior."

¶ 22 The trial court also found defendant's prior criminal history was aggravating and noted defendant had "several prior felony convictions including four prior department of corrections sentences." The court found a sentence was necessary to deter others from committing the same crime.

¶ 23 Regarding factors in mitigation, the trial court stated, "I can find none." The court elaborated:

> "I don't believe that, again, Factors 1 or 2 are present as this is something that contemplated serious harm. I don't find that the defendant acted under a strong provocation as he was intoxicated and was the aggressor in a domestic battery. I don't find that his intoxication was a substantial ground to excuse or justify his criminal conduct. I don't find that it was caused, induced, or facilitated by anyone other than himself and so on.

The only factor in mitigation that is close is the fact that this would take the defendant away from his children. I have heard some evidence through the course of the hearing that the defendant spends time with his children, supports the children financially, although I'm not sure to what extent. I also didn't hear specifically how often, except that there was perhaps some testimony about visits every weekend. So on one hand, obviously, yeah, the relationship of [defendant] to his children in one regard is important in that there's the potential that there is a positive role that [defendant] is playing in these children's lives; however, I also agree with the line of argument from the State that while there is value in these positive moments, it's overcome by the negative influence, particularly where there is evidence that [defendant] beat the mother of his child in that child's presence at a time when she was pregnant with his own child.

[Defendant], you say you don't hit females, but obviously you did so that's patently untrue, so I don't find any factors in mitigation present."

¶ 24 The trial court reiterated defendant's conduct was impulsive. However, it noted he had the chance to correct his mistake but failed to do so. The court stated defendant "went so far as to taunt the people who were attempting to facilitate the return of [R.D.M.]" and never turned himself in; rather, he "had to be found." The court concluded defendant had an opportunity to rectify the situation but "chose to escalate the situation by sending threats." The court stated that when considering defendant's prior sentences, the minimum sentence was not appropriate. The court sentenced defendant to 12 years' imprisonment.

¶ 25 Defendant filed a motion to reconsider his sentence, arguing it was excessive. At the hearing on defendant's motion, the trial court reiterated defendant's conduct had caused or

threatened serious harm. The court noted defendant drove around intoxicated with a kidnaped child. The court further added: "[D]efendant being intoxicated in this instance was clearly voluntary and is certainly not a factor in mitigation." Regarding defendant being a parent, the court stated defendant himself stated he only saw his children on weekends and found he was not the primary caregiver. The court found there was no evidence defendant provided for the day-to-day needs for his children. The court also found there was no specificity to the amount of financial support defendant provided for his children. The court denied defendant's motion.

¶ 26    This appeal followed.

¶ 27    II. ANALYSIS

¶ 28    On appeal, defendant argues the trial court abused its discretion when imposing his 12-year sentence because the court failed to consider pertinent mitigating evidence.

¶ 29    "The legislature sets forth by statute the range of permissible sentences for each class of criminal offense." *People v. Fern*, 189 Ill. 2d 48, 53 (1999). A reviewing court affords great deference to a trial court's sentencing judgment because, "having observed the defendant and the proceedings, [it] is in a far better position to consider such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, and habits than a reviewing court, which must rely on a 'cold' record." *People v. Little*, 2011 IL App (4th) 090787, ¶ 24. A sentence that falls within the applicable statutory limits is reviewed for an abuse of discretion. *People v. Price*, 2011 IL App (4th) 100311, ¶ 36. "A sentence within statutory limits will not be deemed excessive and an abuse of the court's discretion unless it is 'greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense.' " *People v. Pina*, 2019 IL App (4th) 170614, ¶ 20 (quoting *Fern*, 189 Ill. 2d at 54).

¶ 30   Here, defendant pleaded guilty to aggravated kidnaping, a Class X felony. 720 ILCS 5/10-2(a)(2), (b) (West 2022). Under the Unified Code of Corrections, defendant is subject to a term of not less than 6 years and not more than 30 years in prison. 730 ILCS 5/5-4.5-25(a) (West 2022). Because defendant's sentence was within the permissible range, we begin with the presumption the sentence was proper. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46.

¶ 31   Defendant first contends the sentence was unduly excessive based on his individual characteristics and the overall facts and circumstances of his conduct in this case. Defendant notes he never intended to harm or endanger R.D.M., his text messages to the contrary were insincere, he was remorseful, he has good potential for rehabilitation, and he suffered from alcohol and substance abuse issues.

¶ 32   We are unpersuaded by defendant's arguments on appeal. See *Insurance Benefit Group, Inc. v. Guarantee Trust Life Insurance Co.*, 2017 IL App (1st) 162808, ¶ 44 ("[D]efendant, as the appellant, bears the burden of persuasion as to [his] claims of error."). The abuse of discretion standard is deferential to sentencing courts. *People v. Fisher*, 407 Ill. App. 3d 585, 589 (2011). In this case, the court found in aggravation not only defendant's significant criminal history but also the need for deterrence and the fact his conduct caused or threatened serious harm. Defendant's PSI showed multiple felony convictions and several prior sentences to the Illinois Department of Corrections. Ultimately, the court was in a better position to observe defendant's conduct and weigh the need for a harsher sentence. The fact mitigating factors may have existed in defendant's case does not outweigh the various aggravating factors the court noted in its decision. A trial court is not required to afford greater weight to mitigating factors than to the severity of the offense. *People v. Alexander*, 239 Ill. 2d 205, 214 (2010); see *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002) (noting the seriousness of the offense is the most

important sentencing factor). Nor does the presence of mitigating factors require a minimum sentence. *People v. Jones*, 2014 IL App (1st) 120927, ¶ 55. To be clear, defendant's offense is very serious. While intoxicated, defendant knowingly drove a vehicle with an infant he had kidnaped in the back seat and then proceeded to make matters worse by, as the trial court stated, "taunt[ing]" concerned family members by threatening to take the child out of state and sell the child on the black market. Based on the circumstances of the offense, we find the court's sentence was not unduly excessive.

¶ 33    Defendant next contends the trial court improperly concluded there were no mitigating factors. The trial court is not required to recite each factor it considers when sentencing a defendant. *People v. McDonald*, 322 Ill. App. 3d 244, 251 (2001). Where mitigating evidence is before the court, it is presumed the court considered it. *Id.* Additionally, "that presumption will not be overcome without explicit evidence from the record that the *** court did not consider mitigating factors." *People v. Flores*, 404 Ill. App. 3d 155, 158 (2010).

¶ 34    Specifically, defendant points to the trial court's statement, "With respect to factors in mitigation, I can find none," as explicit evidence the court did not consider mitigating evidence. We disagree.

¶ 35    "In determining whether the trial court based the sentence on proper aggravating and mitigating factors, a court of review should consider the record as a whole, rather than focusing on a few words or statements by the trial court." *People v. Dowding*, 388 Ill. App. 3d 936, 943 (2009). After the court stated it could find no mitigating factors, it explained why various statutory factors in mitigation were not applicable. In context, the record demonstrates the court, despite its statement, thoroughly considered the potential mitigating factors and found none applied.

¶ 36　　　　　Defendant also points to the statutory mitigating factor the court was required to consider, *i.e.*, "defendant did not contemplate that his criminal conduct would cause or threaten serious physical harm to another." 730 ILCS 5/5-5-3.1(a)(2) (West 2022). Defendant argues there was no evidence presented that he ever specifically contemplated the possibility his conduct would involve causing or threatening physical harm to R.D.M. We disagree.

¶ 37　　　　　Defendant testified he was aware R.D.M. was in the back seat when he drove off in the vehicle. He knew he was intoxicated. He even stated: "Even though I was drunk, I knew there was a child in the car. I still wasn't driving reckless, I was just angry." Defendant admitted he drove back to the house, only to turn away when he realized the police were present. Defendant clearly contemplated the harm he could have caused to R.D.M.

¶ 38　　　　　While defendant couched his threats of taking R.D.M. out of state or selling R.D.M. as insincere in an attempt to make his family angry, it does not remove the intent he had to make Greenlief and her grandmother think his threats were conceivable when he made them. Thus, defendant contemplated the effects of threatening harm to R.D.M.

¶ 39　　　　　Ultimately, we conclude the trial court considered the proper factors and imposed a reasonable sentence based on the circumstances of the offense. That is, we find the court did not abuse its discretion when it imposed a 12-year sentence.

¶ 40　　　　　　　　　　　　　　　III. CONCLUSION

¶ 41　　　　　For the reasons stated, we affirm the trial court's judgment.

¶ 42　　　　　Affirmed.